**Opinion filed September 15, 2017**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-16-00287-CR & 11-16-00288-CR

_____

## ROBERT BRUCE RENFROE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 39th District Court**

**Haskell County, Texas**

**Trial Court Cause Nos. 6785 & 6770**

## O P I N I O N

Robert Bruce Renfroe complains on appeal that the sentences he received for two convictions constitute cruel and unusual punishment and that his trial counsel was ineffective. We affirm.

### I. *Background Facts*

Appellant pleaded guilty to the offense of aggravated assault in Cause No. 6770, but the trial court deferred a finding of guilt, placed him on "deferred adjudication" community supervision for six years, and imposed a $1,500 fine. *See*

TEX. PENAL CODE ANN. § 22.02(a) (West 2011). The State later moved to revoke his community supervision and adjudicate his guilt based upon Appellant's alleged violations of the terms and conditions of his community supervision. Specifically, the State alleged that Appellant had committed the offense of assault causing bodily injury to a family member, had failed to timely report a charge against him to his probation officer, and had possessed a deadly weapon—a machete.

Before the hearing on the State's motion to revoke, Appellant's trial counsel informed the trial court that Appellant had suffered a stroke thirteen months before the hearing. Appellant's trial counsel told the trial court, after he had spoken with Appellant, that he believed Appellant was competent. Appellant told the trial court that he had been able to answer his trial counsel's questions, that he understood what was happening in court, and that he had never been found incompetent by any court. The trial court found that Appellant was competent.

After the trial court found that Appellant was competent, it held a hearing on the State's motion to revoke. Appellant's probation officer, Christopher Davis, testified that Appellant never notified him of the pending charge of assault causing bodily injury to a family member. Appellant's wife, Gwynn Grazetti Renfroe, testified that Appellant threatened her, struck her in the eye, and used a machete to hit a picture above her head. Charlene Williams, Officer Brandon Jacob of the Haskell Police Department, and Haskell Chief of Police Scott Kennedy testified that they saw Gwynn's face the day of the incident and that she had sustained bruises and injuries to her face.

After the hearing on the motion, the trial court found "true" the State's allegations of Appellant's violations of the terms and conditions of his community supervision. The trial court revoked Appellant's community supervision and adjudicated him guilty of the offense of aggravated assault. During the punishment portion of the hearing, David Halliburton, a former Haskell County sheriff, testified

2

that Appellant had a bad reputation for being a law-abiding person. Appellant testified on his own behalf and explained that his mental ability had deteriorated due to his stroke, that he had trouble sleeping, and that he suffered from various physical ailments. After the punishment portion of the hearing, the trial court assessed punishment at confinement for ten years, sentenced Appellant, and ordered him to pay all fines, fees, court costs, and court-appointed attorney's fees.

In Cause No. 6785, Appellant pleaded guilty to the offense of theft of a firearm, and the trial court assessed punishment at confinement for two years, suspended the imposition of the sentence, and placed Appellant on community supervision for five years. *See* PENAL § 31.03(e)(4)(C) (West Supp. 2016). Later, the State moved to revoke Appellant's community supervision in this case. The State alleged the same violations as in the aggravated assault case but also alleged that Appellant had failed to pay court costs for more than a year. The trial court heard the motion to revoke in the theft case during the same hearing as the motion in the aggravated assault case, found that the allegations were "true," revoked Appellant's community supervision, imposed the original sentence of confinement for two years, and ordered him to pay all fines, fees, and court costs.

## II. *Analysis*

### A. *Issue One: Appellant failed to preserve his cruel and unusual punishment complaint for appellate review, but even if preserved, his claim fails because his sentences were not cruel or unusual.*

Appellant asserts in his first issue that the trial court violated his right to be free from cruel and unusual punishment, as defined by the Eighth Amendment of the United States Constitution.[1] He argues that the trial court violated evolving standards of decency in light of Appellant's stroke and related disabilities when it sentenced him to confinement for ten years for the aggravated assault offense and confinement for

---

[1]U.S. CONST. amend. VIII.

two years for the theft offense. In response, the State asserts that Appellant's sentences were not cruel and unusual because the sentences fell within the statutory range of punishment and because of the seriousness of the offenses.

> *1. Appellant did not complain about his sentence in the theft case at the time that the trial court originally sentenced him, and he has forfeited that issue on appeal.*

In the theft case, Appellant pleaded guilty to the offense of theft of a firearm, and the trial court assessed punishment pursuant to the terms of the plea bargain at confinement for two years. In accordance with the plea agreement, the trial court suspended the imposition of the sentence and placed Appellant on community supervision for five years. *See* TEX. R. APP. P. 25.2(a)(2) (limiting right to appeal). Appellant did not complain at the original sentencing hearing about his sentence being cruel and unusual; in fact, he agreed to that sentence. He may not, after being sentenced and having his sentence suspended, wait until he violates the community supervision order to appeal his sentence. *See Manuel v. State*, 994 S.W.2d 658, 661 (Tex. Crim. App. 1999). A "defendant placed on 'regular' community supervision may raise issues relating to the conviction . . . only in appeals taken when community supervision is originally imposed." *Manuel*, 994 S.W.2d at 661.

> *2. Appellant did not object to the sentence in the aggravated assault case at the trial court and has not preserved that issue for appeal.*

Appellant never objected in the trial court on Eighth Amendment grounds. He also did not object in the trial court, on constitutional or other grounds, to the alleged disparity, cruelty, unusualness, or excessiveness of the sentence. To preserve an error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a). In the absence of a timely objection or request, a defendant's complaint is not preserved for appellate review. *See Vidaurri v. State*, 49 S.W.3d

4

880, 886 (Tex. Crim. App. 2001). Therefore, Appellant has failed to preserve his complaint. *See id.*; *see also Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (failure to raise Eighth Amendment issue in trial court or in motion for new trial fails to preserve error for appeal); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (Eighth Amendment issues are forfeited if not raised in the trial court); *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (holding that a claim of a grossly disproportionate sentence in violation of the Eighth Amendment was forfeited by failure to object).

> 3. *Even if Appellant had preserved his complaints, his claims still fail because his sentences were not cruel and unusual.*

However, even if we are incorrect and Appellant has preserved his complaints, his claim of cruel and unusual punishment still fails because his sentences were not cruel or unusual. When we review a trial court's sentencing determination, "a great deal of discretion is allowed the sentencing judge." *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). We will not disturb a trial court's decision as to punishment absent a showing of abuse of discretion and harm. *Id.* When a sentence falls within the statutory range of punishment, it is generally not "excessive, cruel, or unusual." *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). The statutory range of punishment for a second-degree felony is confinement for not more than twenty years or less than two years. PENAL § 12.33(a) (West 2011). The statutory range of punishment for a state jail felony is confinement for not more than two years or less than 180 days. *Id.*

An individual's sentence may constitute cruel and unusual punishment, despite falling within the statutory range, if it is grossly disproportionate to the offense. *Solem v. Helm*, 463 U.S. 277, 287 (1983). The Eighth Amendment prohibits grossly disproportionate sentences. *Bradfield v. State*, 42 S.W.3d 350, 353 (Tex. App.—Eastland 2001, pet. ref'd) (citing *Harmelin v. Michigan*, 501 U.S. 957

5

(1991)).  However, "[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare." *Solem*, 463 U.S. at 289–90 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)). In both cases, the trial court assessed sentences that were within the statutory range. Nonetheless, if the sentences are grossly disproportionate to the offenses or sentences in other similar offenses, the sentences may violate the Eighth Amendment.  *See Bradfield*, 42 S.W.3d at 353.

To evaluate the proportionality of a sentence, the first step is to make a threshold comparison between the gravity of the offense and the severity of the sentence.  *Id.*  When we analyze the gravity of the offense, we examine the harm caused or threatened to the victim or society and the culpability of the offender.  *See, e.g.*, *Hooper v. State*, No. 11-10-00284-CR, 2011 WL 3855190, at *3 (Tex. App.—Eastland Aug. 31, 2011, pet. ref'd) (mem. op., not designated for publication) (citing *Solem*, 463 U.S. at 291–92).  We also consider the sentence imposed in light of the offender's prior adjudicated and unadjudicated offenses.  *Culton v. State*, 95 S.W.3d 401, 403 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *see McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).  Only if grossly disproportionate to the offense, must we then compare Appellant's sentences with the sentences received for similar crimes in this jurisdiction or sentences received in other jurisdictions. *Bradfield*, 42 S.W.3d at 353–54.

At the revocation hearing, the trial court heard testimony that, while Appellant was on community supervision for aggravated assault and theft of a firearm, he threatened and struck his wife, swung a machete at her, and failed to timely report a new pending charge to his probation officer.  The trial court also heard testimony that Appellant failed to pay his court costs in the theft case.  In response, Appellant's trial counsel argued at the hearing that Appellant had suffered a stroke that impaired his ability to think clearly.  Defense counsel also argued that

Appellant did not intend to injure the victim because Appellant was crippled and could not do anything and, at the time of the incident, suffered from a lack of sleep. At the end of the punishment portion of the hearing, the trial court noted:

> I understand that the -- you know, the problems that you're having with your health and -- but we've got some problems here. Of course, you've got two previous cases that you've been on probation: one's an aggravated assault with a deadly weapon; the other one is theft of a firearm.
>
> We had two -- had two credible witnesses that came in and testified. One was Gwynn. I don't think there's any question that there was an incident of assault family violence, the incident that happened there. She had a black eye. Ms. Williams testified that she – she was there right after the incident apparently happened; that she had a black eye. And so we've got some problems here.

We have reviewed the records and have found nothing to indicate that Appellant's sentences were grossly disproportionate to his offenses. In light of this holding, we need not compare Appellant's sentences with the sentences others received for similar crimes in this jurisdiction or sentences received in other jurisdictions. *See Bradfield*, 42 S.W.3d at 353–54. We hold that Appellant's sentences do not constitute cruel and unusual punishment. *See Luttrell v. State*, No. 11-13-00327-CR, 2015 WL 5602365, at *2 (Tex. App.—Eastland Sept. 17, 2015, no pet.) (mem. op., not designated for publication). We overrule Appellant's first issue in each appeal.

B. *Issue Two: Appellant's ineffective assistance claim fails because he failed to adduce evidence that his trial counsel's performance was unreasonable.*

Appellant complains in his second issue that he did not have effective assistance of counsel. An accused is denied effective assistance of counsel when his counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The *Strickland* test has two

prongs: (1) whether counsel's conduct fell within the wide range of reasonable professional assistance and (2) whether there is a reasonable probability the outcome would have differed but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland*, 466 U.S. at 686. To overcome the presumption that counsel's conduct was reasonable and professional, the defendant must present evidence "firmly founded in the record" that counsel's decision was not "tactical or strategic," and the trial record is usually insufficient to do so. *Bone v. State*, 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002); *see Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Appellant asserts that his trial counsel was ineffective because he failed to request a medical examination of Appellant. During the punishment portion of the hearing, Appellant testified that he suffered from various physical ailments as the result of a stroke. Appellant testified that he had not been thinking clearly since the stroke and that he had been taking antidepressants and sleep medication. Appellant also testified that he was suffering from a lack of sleep when he violated the terms and conditions of his community supervision. Appellant asserts that "the demonstrated failure of trial counsel to obtain medical testimony that would have allowed the trial court to make a more informed decision regarding punishment 'fell below an objective standard of reasonableness.'" We disagree. The records before us do not demonstrate deficient conduct on the part of trial counsel; counsel asked Appellant on direct examination how his mental and physical health had suffered since his stroke.

Appellant also contends that his trial counsel's conduct was deficient because "there is a reasonable probability" his punishment "would have been different had trial counsel pursued Appellant's obvious mental and physical disabilities with professional testimony." Generally, a claim of ineffective assistance of counsel, based on trial counsel's failure to call witnesses, cannot succeed absent a showing

8

that the witnesses were available to testify and that their testimony would have benefited the defendant. *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007). Likewise, the failure to request an expert witness will not be determined to constitute ineffective assistance absent a showing that the expert would have testified in a manner that would have benefited the defendant. *Brown v. State*, 334 S.W.3d 789, 803 (Tex. App.—Tyler 2010, pet. ref'd). Appellant has failed to show that medical testimony would have aided his defense. We cannot speculate on what a medical expert would have said about Appellant's medical state and its effect, if any, on punishment.

A review of the records in the aggravated assault case and the theft case do not reflect that trial counsel's representation was "so deficient and so lacking . . . as to overcome the presumption" that it was within the wide range of reasonable professional assistance. *Bone*, 77 S.W.3d at 833. "A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel." *Hudson v. State*, No. 11-15-00047-CR, 2016 WL 3573484, at \*2 (Tex. App.—Eastland June 30, 2016, pet. ref'd) (mem. op., not designated for publication) (citing *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010)). Accordingly, we overrule Appellant's second issue in each appeal.

III. *This Court's Ruling*

We affirm the judgments of the trial court.


MIKE WILLSON

September 15, 2017                    JUSTICE

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.